UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION
CASE NO.

ELITA BOZEMAN, Mother and Guardian
of the person and property of KENNETH
BOZEMAN, an incapacitated person; as
Guardian of BRIDGETT BOZEMAN, a
minor; as Guardian of ALYSSA
BOZEMAN, a minor; and as Assignee of
KAREN BONAGUA, Assignor,

2:10-cv-102-FtM-36SPC

Plaintiff,

vs.

AMERICAN INTERNATIONAL SOUTH
INSURANCE COMPANY,

Defendant.
_____/

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, ELITA BOZEMAN, Mother and Guardian of the person and property of KENNETH BOZEMAN, an incapacitated person; as Guardian of BRIDGETT BOZEMAN, a minor; as Guardian of ALYSSA BOZEMAN, a minor; and as Assignee of KAREN BONAGUA, Assignor, (hereinafter "BOZEMAN") by and through her undersigned attorneys, sues the Defendant, AMERICAN INTERNATIONAL SOUTH INSURANCE COMPANY, an Illinois corporation (hereinafter referred to as ("AMERICAN INTERNATIONAL"), and alleges:

### GENERAL ALLEGATIONS

1.  This is an action for damages exceeding SEVENTY FIVE THOUSAND DOLLARS ($75,000.00), excluding costs, interest, and attorneys' fees.

2.  At all times material hereto, ELITA BOZEMAN, KENNETH BOZEMAN,

BRIDGETT BOZEMAN and ALYSSA BOZEMAN were citizens of the state of Florida.

3.  At all times material hereto, Defendant, AMERICAN INTERNATIONAL, was a foreign corporation, authorized to do business in the State of Florida, and was engaged in the business of issuing policies of insurance in the State of Florida and handling claims in the State of Florida.

4.  At all times material hereto, Assignor, KAREN BONAGUA and her son, MATTHEW McQUEARY, were citizens of the state of Florida.

5.  AMERICAN INTERNATIONAL issued to BONAGUA an insurance contract. AMERICAN INTERNATIONAL is in possession of a copy of the insurance contract.

6.  The above-referenced insurance contract was intended to cover and indemnify BONAGUA and McQUEARY for bodily injury liability arising out of the operation of BONAGUA's automobile, to the extent of the bodily injury liability limits, which were $100,000.00 per person and $300,000.00 per occurrence.

7.  On or about October 23, 2006, while the above-referenced contract was in full force and effect, McQUEARY, the son and permissive driver of BONAGUA's motor vehicle, was involved in an automobile accident, during which the vehicle crashed head-on into a vehicle in which KENNETH BOZEMAN was a passenger. The collision resulted in devastating, life-threatening injuries to KENNETH BOZEMAN, including profound brain damage. The collision also killed four people and caused injuries to two other passengers.

8.  ELITA BOZEMAN was appointed Guardian of KENNETH BOZEMAN and his two minor children, BRIDGETT and ALYSSA.

9.  Defendant, AMERICAN INTERNATIONAL, was timely notified about the

accident and the resulting claims, and at all material times hereto had sufficient information about the catastrophic injuries and damages suffered by KENNETH BOZEMAN.

10. On November 8, 2006, an AMERICAN INTERNATIONAL representative sent a letter to each of the attorneys involved in the matter, requesting a global settlement conference because it believed that it was "impossible" to determine how to distribute the policy based on the information that was in AMERICAN INTERNATIONAL's possession.

11. On November 29, 2006, one of the attorneys retained to represent one of the passengers killed in the crash, sent a 20-day demand letter to AMERICAN INTERNATIONAL, demanding the single per-person bodily injury policy limit of $100,000 to settle the claims of his client. Since the time limit imposed by this letter would expire prior to the date of the proposed global settlement conference, the conference was moved to an earlier date, December 16, 2006.

12. On December 4, 2006, Steven Wittmer, Esquire, on behalf of Kenneth Bozeman, sent to AMERICAN INTERNATIONAL a time limited demand letter, which demanded tender of the $100,000.00 per person policy limits of $100,000 for Kenneth Bozeman's injuries. Mr. Wittmer's letter clearly documented that Mr. Bozeman's injuries and damages presented one of the largest exposures to AMERICAN INTERNATIONAL's insureds in comparison to the other claims. Specifically, Mr. Wittmer's letter advised that Kenneth Bozeman remained in the Intensive Care Unit of Lee Memorial Hospital and that a representative of AMERICAN INTERNATIONAL was welcome to come see Mr. Bozeman. Additionally, Mr. Wittmer provided AMERICAN INTERNATIONAL with medical authorizations so that AMERICAN INTERNATIONAL could request any and all medical documentation that it felt necessary. The demand letter also advised that at the time of the crash, Mr. Bozeman was only twenty-six years old,

was a single parent and had two minor children (four year old Alyssa and one year old Bridgett).

13. Mr. Wittmer's December 4th demand letter also advised AMERICAN INTERNATIONAL that he also represented decedents Andy Smallwood, Nathan Simpson, and Bonito Zacarius. Mr. Wittmer included in the demand medical authorizations on behalf of these three decedents and stated, "I hope to have offers [demand letters] on these claims sent to you in the near future."

14. Accordingly, Mr. Wittmer represented four of the claimants involved in the crash. Mr. Wittmer viewed Mr. Bozeman as having the most significant injuries and damages of the claimants he represented.

15. On December 11, 2006, Mr. Wittmer advised AMERICAN INTERNATIONAL that he was not available for the global mediation scheduled for December 16, 2006 due to his trial schedule. He also advised that since AMERICAN INTERNATIONAL was moving forward with the global settlement conference, he, on behalf of his remaining clients, demanded the remainder of the per-occurrence policy limits of $300,000 and provided additional information on those claimants other than KENNETH BOZEMAN.

16. On December 22, 2006, AMERICAN INTERNATIONAL accepted Mr. Wittmer's December 11th demand by tendering $200,000 to settle the death claims of Zacarias, Simpson, and Smallwood. AMERICAN INTERNATIONAL rejected the Bozeman claim, which presented the greatest exposure to its insureds.

17. Based on all of the information contained in AMERICAN INTERNATIONAL's possession by December 22, 2006, (including the two settlement demand letters from Mr. Wittmer and the settlement demand letter from the other claimant), it should have been abundantly clear to

AMERICAN INTERNATIONAL that it could not settle all of the claims against its insureds within the $300,000 per-occurrence policy limits. The controlling case law at the time, as it relates to multiple claimant situations, required AMERICAN INTERNATIONAL under these circumstances to settle the KENNETH BOZEMAN claim within policy limits because that claim clearly presented the greatest exposure to its insureds. AMERICAN INTERNATIONAL was required to do this even if it left no proceeds available for some claimants because AMERICAN INTERNATIONAL would have eliminated the claim that posed the greatest risk to its insureds. *Liberty Mutual Ins. Co. v. Davis*, 412 F.2d 475 (5th Cir. 1969); *Farinas v. Florida Farm Bureau*, 850 So.2d 555 (Fla. 4th DCA 2003); *Marsh v. General Security Insurance Company*, 303 F. Supp. 2d 1321 (M.D. Fla. 2004).

18. On December 28, 2006, because AMERICAN INTERNATIONAL rejected his claim, BOZEMAN filed suit against BONAGUA and McQUEARY.

19. On November 24, 2009 a Final Judgment was entered in favor of BOZEMAN against BONAGUA and McQUEARY in the amount of $9,000,000.00.

20. At all material times, BONAGUA and McQUEARY cooperated with AMERICAN INTERNATIONAL

21. By separate document, BONAGUA assigned to BOZEMAN any and all of her rights against Defendant, AMERICAN INTERNATIONAL, including the right to bring BONAGUA's insurance bad faith action against AMERICAN INTERNATIONAL and BONAGUA's right to attorney's fees for this action pursuant to section 627.428, Florida Statutes.

## COUNT I

## BAD FAITH OF DEFENDANT, AMERICAN INTERNATIONAL

22. BOZEMAN adopts and re-alleges the allegations contained in Paragraphs 1 through 21 above as if fully set forth herein.

23. AMERICAN INTERNATIONAL, pursuant to the insurance contract and Florida law, owed good faith duties to BONAGUA, including but not limited to the following:

    a. to use toward BONAGUA the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business;

    b. to exercise such control in handling the claims against BONAGUA and in making decisions with regard to both settlement and litigation in good faith and with due regard for the interests of BONAGUA;

    c. to timely investigate the claims;

    d. to timely and properly evaluate the claims against BONAGUA and the risk to BONAGUA;

    e. to timely advise BONAGUA of settlement opportunities;

    f. to advise BONAGUA as to the probable outcome of litigation;

    g. to warn BONAGUA of the possibility of an excess judgment and to advise BONAGUA of any steps which she might take to avoid same;

    h. to timely and properly evaluate the exposure presented by the BOZEMAN claim versus the exposure presented by other claimants;

    I. to settle the BOZEMAN claim, where a reasonable, prudent person, faced with the prospect of paying the

       total recovery, would do so;

j.    to settle BOZEMAN's claim against BONAGUA and McQUEARY within BONAGUA's per person policy limits when, under all of the circumstances, it could and should have done so, had it acted fairly and honestly toward BONAGUA and with due regard for BONAGUA's interest;

k.    to settle all claims against BONAGUA within policy limits, if possible. If settling all claims within policy limits was not possible, to settle the BOZEMAN claim within policy limits, as the BOZEMAN claim presented the greatest risk and exposure to BONAGUA;

l.    to keep BONAGUA informed of the claim resolution process and his exposure;

m.    to minimize the magnitude of possible excess judgments against BONAGUA by reasoned claim settlement.

24. The foregoing duties are fiduciary and non-delegable.

25. Defendant, AMERICAN INTERNATIONAL, is liable for the acts and omissions of its agents, employees or representatives in the handling of the claim against BONAGUA.

26. AMERICAN INTERNATIONAL, through its agents, employees and representatives, breached its duties of good faith to BONAGUA by, including but not limited to:

a.    failing to use toward BONAGUA the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of this own business;

b.    failing to exercise such control in handling the claim and in making decisions with regard to both settlement and litigation in good faith and with due regard for the interests of BONAGUA;

c. failing to timely investigate the claims;

d. failing to timely and properly evaluate the BOZEMAN claim against BONAGUA and the risk to BONAGUA;

e. failing to timely advise BONAGUA about settlement opportunities;

f. failing to advise BONAGUA of the probable outcome of litigation;

g. failing to warn BONAGUA of the possibility of an excess judgment and to advise BONAGUA of any steps which she might take to avoid same;

h. failing to timely and properly evaluate the exposure presented by the BOZEMAN claim versus the exposure presented by other claimants;

I. failing to settle the BOZEMAN claim within the per person policy limits where a reasonable, prudent person, faced with the prospect of paying the total recovery, would do so;

j. failing to settle the BOZEMAN claim within BONAGUA's per person policy limits when it could and should have done so had it acted fairly and honestly toward its insured and with due respect for BONAGUA's interests;

k. failing to settle all claims against BONAGUA within the policy limits, or in the alternative, failing to settle the BOZEMAN claim within the per person policy limits as it presented the greatest risk and exposure to BONAGUA and McQUEARY;

l. failing to keep BONAGUA informed of the claim resolution process and her exposure;

m. failing to minimize the magnitude of possible excess judgments against BONAGUA by reasoned claim settlement.

27. As a result of AMERICAN INTERNATIONAL's breaches of its duties of good faith and its failure to settle the BOZEMAN claim within policy limits when it could have and should have done so, BONAGUA and McQUEARY now have a Final Judgment in excess of $9,000,000.00, plus legal interest, entered against them.

28. As a result of the above breaches of its duties of good faith by AMERICAN INTERNATIONAL, BOZEMAN, as assignee of the insureds, BONAGUA and McQUEARY, has employed Slawson Cunningham Whalen & Gaspari to bring this action and has agreed to pay the law firm reasonable attorneys' fees for its services. By virtue of her assignment from BONAGUA, BOZEMAN is entitled to recover reasonable attorneys' fees for this action pursuant to §627.428, Florida Statutes.

WHEREFORE, Plaintiff, BOZEMAN, demands judgment against the Defendant, AMERICAN INTERNATIONAL SOUTH INSURANCE COMPANY, for damages, including the amount of the Final Judgment, interest, attorneys' fees and costs, and further demands trial by jury.

Dated this 12th day of February, 2010.

SLAWSON, CUNNINGHAM,
WHALEN & GASPARI, P.L.
2401 PGA Boulevard, Suite 140
Palm Beach Gardens, FL 33410
Telephone (561) 625-6260
Facsimile (561) 625-6269
Attorneys for Plaintiff

_____
Fred A. Cunningham
Florida Bar # 775487